IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| **DONALD TERRY STOGNER,** | § | |
| | § | No. 9:16-CV-00063 |
| **v.** | § | |
| | § | |
| | § | |
| **COMMISSIONER OF THE SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Plaintiff, Donald Terry Stogner, requests judicial review of a final decision of the Commissioner of Social Security Administration with respect to his application for disability-based benefits. In accordance with the provisions of 28 U.S.C. § 636(c), the parties in this case have consented to have a United States Magistrate Judge conduct all proceedings, including trial, entry of a final judgment, and all post-judgment proceedings. The undersigned finds that the administrative law judge's decision lacks reversible error and is supported by substantial evidence. The administrative law judge's decision denying benefits is affirmed.

**I.    Background**

Donald Terry Stogner is 63 years old and last worked full-time on September 27, 2012, at a bar where he was fired by his boss after having a disagreement with a customer. Stogner surmised that he wouldn't have been able to work at the bar much longer after his termination due to the fact that he had been previously injured his back and shoulder while on the job. He had tears in the labrum of his right shoulder and had those surgically repaired in March 2014. Stogner testified that he was undergoing physical therapy but still couldn't raise his arm above his shoulder.

1

Stogner also complained about problems with his back and has stated that his lower back had been troubling him for a number of years due to the physical work that he previously performed as a painter.

After the shoulder injury and his termination from work, Stogner was treated by Dr. Brian Spore, D.O. who opined on February 27, 2013, that Stogner had decreased range of motion in his neck, slightly weak grip strength, and decreased range of motion in his back. On March 23, 2013, Stogner was examined by Dr. Jerry Loving, D.O. at the request of the Administration. Although he complained of pain in his neck and back, he acknowledged that he had received no treatment other than prescription strength pain medication. Dr. Loving opined that Stogner had only mild limitations in walking, standing, lifting, and carrying. Stogner subsequently underwent an MRI on his right shoulder in January 2014, which indicated a tear in his rotator cuff. He confirmed that he underwent arthroscopic surgery on his right shoulder and had been taking hydrocodone since that time for shoulder-related discomfort.

Stogner also contends that he is disabled due to anxiety and anger issues. He began treatment for these problems at the local VA clinic after his alleged onset date of September 27, 2012. He saw Frankie Clark, Ph.D. for a psychological evaluation on January 24, 2013, and advised Dr. Clark that he was applying for disability because of issues with anger, anxiety, and being a perfectionist. He further advised that he had a history of driving under the influence and had been charged with possession in the past. Dr. Clark assessed Stogner as having anxiety disorder and alcohol abuse in partial sustained remission.

On February 5, 2013, Stogner underwent an initial evaluation for psychiatric care at a Veterans' Administration Clinic and was diagnosed with depression and anxiety. On February 25,

2013, he advised a VA psychiatrist that he gets easily aggravated when drinking and stated that he could quit drinking if he wanted to. The VA psychiatrist felt that Stogner was downplaying his alcohol problem and indicated that his issues with anxiety would be difficult to treat as long as he continued to drink.

Although Stogner alleges that his physical impairments interfere with his ability to lift, stand, walk, bend, climb, and squat, he acknowledged that he shops in stores, manages his finances, drives, cooks, loads and unloads the dishwasher, sweeps, mows the yard, and performs self-care and personal hygiene tasks. Stogner spends most of his time at home, watching television and spending time on his computer. Stogner testified that he has not had any emergency medical treatment or overnight hospitalizations related to his back and shoulder since he last worked.

Stogner protectively applied for disability, Disability Insurance Benefits ("DIB"), and supplemental security income on October 1, 2012, alleging disability beginning September 27, 2012, due to degenerative disc disease, pain in upper back, shoulder, neck, carpal tunnel syndrome, high cholesterol, anger, and anxiety.[1] (Tr. 19, 239). The claims were denied initially on April 3, 2013, and upon reconsideration on July 9, 2013. Stogner then timely filed a request for a hearing before an Administrative Law Judge (ALJ) and a hearing was held on May 5, 2014.

---

1. Social Security DIB are authorized by Title II of the Social Security Act and provide income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(c) (definition of insured status); 42 U.S.C. § 423(d) (definition of disability). In contrast, SSI benefits are authorized by Title XVI of the Social Security Act and provide an additional resource to the aged, blind and disabled to assure that their income does not fall below the poverty line. 20 C.F.R. § 416.110 (2015). Eligibility for SSI is based on proof of disability and indigence. *See* 42 U.S. C. § 1382c(a)(3) (definition of disability); 42 U.S.C. §§ 1382(a) (financial requirements). Although these are separate and distinct programs, applicants to both programs must prove "disability" under the Act. *See* 42 U.S.C. § 423(d)(1)(A) (disability insurance); 42 U.S.C. § 1382(c)(3)(A) (SSI). The law and regulations governing the determination of disability are the same for both programs. *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994).

## II. The Five-Step Sequential Evaluation Process

The ALJ utilized the five- step sequential evaluation process for determining whether Stogner was disabled. *See* 20 C.F.R. §§ 404.1520(a) and 416.920(a). At step one, the ALJ must determine whether a claimant is engaging in substantial gainful activity (SGA). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If an individual is not engaging in SGA, the analysis proceeds to the second step. At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant does have a severe impairment or combination of impairments, the analysis proceeds to the third step. At step three, the ALJ must determine whether the claimant's impairment of combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1526, 416.920(d), 416.925, and 416.926). If his impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement, the claimant is disabled. 20 C.F.R. §§ 404.1509 and 416.909. If it does not, the analysis proceeds to the next step. Before proceeding to step four of the sequential evaluation process, the ALJ must first determine the claimant's residual functional capacity, which is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. All of the claimant's impairments are to be considered, including impairments that are not severe. At step four, the ALJ must determine whether the claimant has the residual functional capacity to perform the

requirements of his past relevant work. 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant has the residual functional capacity to do his past relevant work, he is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the last step. At the last step of the sequential evaluation process, the ALJ must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g).

### III. Regulations pertaining to alcohol and drug abuse

Finally, if a claimant is disabled and there is medical evidence of a substance use disorder, the ALJ must determine if the substance use disorder is a contributing factor material to the determination of disability. In making this determination, the ALJ must evaluate the extent to which the claimant's mental and physical limitations would remain if the claimant stopped the substance use. If the remaining limitations would not be disabling, the substance use disorder is a contributing factor material to the determination of disability and the claimant is not disabled under the Act. *See* 20 C.F.R. §§ 404.1535 and 416.935.

### IV. The ALJ's Decision

At step one, the ALJ determined that Stogner has not engaged in substantial gainful activity since September 27, 2012, the alleged onset date. At step two, the ALJ found that Stogner had the following severe impairments: obesity; degenerative joint disease of the right shoulder status post arthroscopic surgery in March 2014; degenerative disc disease; depression; anxiety; and alcohol abuse. His impairments of hypertension and hearing loss were determined to be non-severe

impairments.

At step three, the ALJ found that Stogner's impairments, including the substance use disorder, met sections 12.04, 12.06, and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d) and 416.920(d). The ALJ determined that Stogner had marked restrictions in his activities of daily living; marked difficulties in social functioning; moderate difficulties with regard to concentration, persistence, or pace; and has experienced one to two episodes of decompensation. The ALJ determined that Stogner was disabled at step three, finding that "during periods when the claimant consumed alcohol, the combined effects of his depression, anxiety, and the alcohol use met the listings at 12.04, 12.06, and 12.09, through the 'paragraph B' criteria."

The ALJ further found that, in her opinion, if Stogner stopped the substance use, the remaining limitations (the physical impairments) would cause more than a minimal impact on his ability to perform basic work activities; therefore, he would continue to have a severe impairment or combination of impairments. However, his depression and anxiety, absent heavy drinking, would be non-severe. The ALJ further found that if Stogner stopped the substance use, he would have the residual functional capacity to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) with the ability to lift and/or carry 50 pounds occasionally and 25 pounds frequently as well as to sit for 6 hours and to stand and/or walk for 6 hours in an 8 hour work day. In addition, the ALJ found that Stogner can frequently balance, stoop, kneel, and climb ramps or stairs as well as occasionally crouch, crawl, and climb ladders, ropes, or scaffolds.

The ALJ found that if Stogner stopped the substance abuse, he would be able to perform his past relevant work as a bar manager. The ALJ went on to hold that Stogner's substance abuse was a contributing factor material to the determination of disability because he would not be

disabled if he stopped the substance abuse. She further held that because alcohol abuse was a contributing factor material to the determination of disability, Stogner was not disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of her decision.

## V. Judicial Review

Review of Social Security disability cases "is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)); *see generally* 42 U.S.C. § 405(g) (describing and elaborating on the standard for judicial review of decisions of the Commissioner of Social Security). Substantial evidence is "more than a mere scintilla and less than a preponderance." *Perez*, 415 F.3d at 461 (citation and internal quotation marks omitted). It refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal citation and quotation marks omitted). In applying this standard, the court "may not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (internal citation omitted). The court may affirm only on the grounds that the Commissioner stated for his decision. *Cole v. Barnhart,* 288 F.3d 149, 151 (5th Cir. 2002) (per curiam).

In order to qualify for disability benefits, a claimant must suffer from a disability. *See* 42 U.S.C. § 423(d)(1)(A). The Social Security Act defines a disability as a "medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity." *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002); *see also* 42 U.S.C. § 423(d)(1)(A). As stated above, the Commissioner typically uses a

sequential five-step process to determine whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *see also Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). The analysis is:

> First, the claimant must not be presently working. Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit [his] physical or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment in the appendix to the regulations ["The Listings"]. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the Secretary to establish that the claimant can perform the relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested.

*See Waters*, 276 F.3d at 718 (quoting *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991)); *see generally* § 404.1520. The claimant bears the burden of proof with respect to the first four steps of the five-step analysis. *Waters,* 276 F.3d at 718. If at any step the Commissioner finds that the claimant is or is not disabled, the ALJ need not continue the analysis. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

Reviewing courts give the Commissioner's decisions great deference. *Id.* at 565-66. Courts may not re-weigh evidence, try issues *de novo*, or substitute their judgments for those of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A court cannot reverse the Commissioner simply because the court might have decided the case differently in the first instance. *Elfer v. Texas Workforce Comm'n,* 169 F. App'x 378, 380 (5th Cir. 2006); *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir. 1995) (stating that the court may not "substitute [its] judgment for that of the Secretary"). When the Commissioner fails to apply correct principles of law, or when substantial evidence does not support the Commissioner's decision, the governing statute

authorizes a reviewing court to enter, upon the pleadings and the transcript of the record, a judgment modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. *See* 42 U.S.C. § 405(g). Thus, courts have the power to remand for further administrative proceedings, or they may direct the Commissioner to award benefits without a rehearing. Ordinarily, courts remand for further administrative proceedings to address and cure deficiencies. *See, e.g., Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

## V. Legal Analysis

Stogner raises the following issues on appeal: (1) whether the ALJ erred by failing to properly consider the effects of the severe impairment of alcohol abuse on his residual functional capacity; (2) whether the ALJ failed to properly evaluate his credibility; and (3) whether the ALJ's Step 5 determination is supported by substantial evidence.

### Issue One: whether the ALJ erred by failing to properly consider the effects of severe impairment of alcohol abuse on Stogner's residual functional capacity

Stogner argues that the ALJ erroneously failed to account for the limiting effects of alcohol abuse as a severe impairment when assessing his residual functional capacity (RFC), rendering the RFC and finding of non-disability unsupported by substantial evidence. He argues that the ALJ must consider limitations resulting from all his severe impairments when formulating the RFC and contends that the ALJ should have possibly included a limitation that he not be exposed to alcohol or other addictive substances while on the job.

The Commissioner replies that the ALJ properly considered Stogner's alcohol abuse symptoms during the first part of the bifurcated analysis, finding him to be disabled under the appropriate listings. According to the Commissioner, the ALJ continued to the second part of the

9

analysis and determined that finding that his alcohol abuse was a contributing factor material to the determination of his disability and there was no requirement to incorporate the alcohol related symptoms into the RFC.

The Act prohibits the Commissioner from awarding benefits to a disabled person if drug addiction or alcoholism would be "a contributing factor material to the Commissioner's determination that the individual is disabled." *See Brown v. Colvin*, 2014 WL 351647 (N.D. Tex. Jan 31, 2014); 42 U.S.C. § 423(d)(2)(C). Where a claimant is found disabled and there is evidence of drug or alcohol abuse, the regulations provide a process for evaluating the materiality of the alleged drug or alcohol abuse. *See* 20 C.F.R. §§ 404.1535(b); 416.935. The key factor in this process is whether the Commissioner would still find the claimant disabled if he stopped using drugs or alcohol. *Id*., §§ 404.1535(b)(1); 416.935(b)(1). This determination requires the Commissioner to first evaluate which physical and mental limitations would remain if the claimant discontinued his drug and alcohol use and then determine whether any remaining limitations would be disabling. *Id.*; §§ 404.1535(b)(2); 416.935(b)(2). Whether the drug or alcohol abuse is a contributing factor material to the disability determination depends on whether the limitations remaining after stopping the drug and alcohol use are sufficient, by themselves, to support a finding of disability. *See Snodgrass v. Colvin*, No. 11-CV-0219-P, 2013 WL 4223640, at *2 (N.D. Tex. Aug. 13, 2013). If the remaining limitations are not disabling, the claimant's drug and alcohol abuse is a material factor to the disability determination and an award of benefits is not appropriate. 20 C.F.R. §§ 404.1535(b)(2)(i); 416.935(b)(2)(i). However, if the remaining limitations are disabling, then drug or alcohol abuse is not a material factor and the claimant is entitled to benefits because he is disabled independent of his drug addiction or alcoholism. 20 C.F.R. §§

404.1535(b)(2)(ii); 416.935(b)(2)(ii). The claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor to his disability. *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999).

This Court finds that the ALJ properly utilized § 404.1535 in making the determination that that Stogner was not disabled. After first finding him disabled, the ALJ properly sought to determine whether Stogner's alcoholism was a factor material to his disability. She correctly evaluated what, if any, mental or physical limitations would be remaining if Stogner discontinued his alcohol abuse, and found that they were not disabling. Regarding Stogner's mental issues, the ALJ determined that he would have only mild limitations in the activities of daily living, social functioning, and concentration if the substance abuse ceased. Because there were no episodes of decompensation and because the limitations set forth above were considered "mild" it was determined that the limitations would be non-severe if the alcohol abuse was stopped. See 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).

Stogner's argument that the ALJ should have considered the effects of his alcoholism at the second stage of the bifurcated process is nonsensical. As stated above, the Act prohibits the Commissioner from awarding benefits to a disabled person if drug addiction or alcoholism would be a contributing factor material to the Commissioner's determination that the individual is disabled. The ALJ determined that Stogner's alcoholism was a contributing factor material to his disability and properly turned her attention to the limitations what would remain if he were to stop abusing alcohol. The ALJ determined that the remaining limitations would not prohibit Stogner from performing his past employment. It would defeat the purpose of the regulations to require the ALJ to look again and consider alcohol related limitations to evaluate whether or not Stogner

was disabled at the second stage of the process, when she had already determined that alcohol abuse was a contributing factor material to his disability. Further, it would allow Stogner to receive disability based on limitations relating to alcohol abuse which is in contravention of the regulation. No error is shown.

### Issue Two: whether the ALJ failed to properly evaluate Stogner's credibility

Stogner argues that the ALJ's credibility determination is not supported by substantial evidence, contending that the ALJ failed to utilize the factors set forth in 20 C.F.R §§ 404.1529(c) and 416.929(c) and relied upon misstatement of facts. The Commissioner replies that the ALJ's credibility determination is supported by substantial evidence.

An ALJ has discretion to judge a claimant's credibility and must evaluate subjective complaints in light of the objective medical evidence on record. *Foster v. Astrue*, 277 Fed. Appx. 462, 464 (5th Cir. 2008). Credibility determinations are generally entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000).

Recently, in March 2016, Social Security Ruling 16-3p superseded Social Security Ruling 96-7p. SSR 16-3P. (S.S.A. Mar. 16, 2016.) SSR 16-3p eliminated the use of the term "credibility" in evaluating an individual's subjective symptom evaluation. *Id.* Now, in determining whether an individual is disabled, the ALJ is to consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record. *Id.* A symptom is the individual's own description or statement of his or her physical or mental impairment(s). See 20 C.F.R. §§ 404.1528(a) and 416.928(a).

Under the regulations, an individual's statements of symptoms alone are not enough to

establish the existence of a physical or mental impairment or disability. SSR 16-3P. However, if an individual alleges impairment-related symptoms, the ALJ must evaluate those symptoms using a two-step process set forth in the regulations. *See* 20 C.F.R. §§ 404.1529 and 416.929. First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. *Id.* Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, the ALJ evaluates the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. *Id.*

In addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ will also use the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), which includes:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p. Although the ALJ is not required to "follow formalistic rules in his articulation" of choices, the administrative decision should be sufficiently specific to make clear that these factors were considered. *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Abshire v. Bowen,* 848 F.2d 638, 642 (5th Cir. 1988); *see also Hillman v. Barnhart,* 170 F. App'x 909, 913, 2006 WL 690879, *3 (5th Cir. March 20, 2006) (holding that ALJ was *not* required to "explicitly discuss every factor set forth in the regulations . . . [when] the ALJ elicited the pertinent information from [plaintiff] . . . [and] remand would be fruitless in light of the lack of objective medical evidence in the record to support [plaintiff]'s allegations of disabling back pain.").

The ALJ in this case set forth the appropriate standard for evaluating Stogner's credibility and stated in his decision that he considered the entire case record. Stogner had related that his impairments interfered with his ability to lift, stand, walk, bend, climb and squat. He estimated that he could only walk a couple of blocks before needing to stop and rest and that his medications cause side effects such as drowsiness and dizziness. However, the ALJ noted that Stogner acknowledges that he is able to shop in stores, manage finances, cook, load and unload the dishwasher, sweep, mow the lawn, and perform self-care and personal hygiene tasks. Stogner's brother confirmed Stogner's daily activities in his answers in a function report.

The ALJ noted that the State Agency medical consultant opined that Stogner could perform medium work. Dr. Jerry Loving, D.O. opined that Stogner only had mild limitations in walking, standing, lifting, and carrying secondary to his back and knee pain. Dr. Loving's records indicated that Stogner had minimal remarkable findings upon physical examination. The ALJ commented that Dr. Loving's assessment of Stogner's ability to work appeared to be based on subjective

complaints because there were a lack of findings in the imaging studies. It appeared to the ALJ that the record included no further significant complaints regarding back or knee pain after March 29, 2013, which indicated to the ALJ that Stogner obtained adequate control of his back and knee issues with his current pain medication and self-care techniques.

Regarding his shoulder complaints, the ALJ noted that imaging studies performed in 2013 showed no significant abnormalities including no evidence of degenerative changes. Stogner testified at the hearing that after his shoulder surgery in March 2004, he began taking hydrocodone for shoulder related discomfort, but there were no records to support this assertion.

Stogner complains that the ALJ erred when assessing his credibility when calling into question his statement that he feels more comfortable standing and walking (rather than sitting) due to back pain and when the ALJ noted that he testified that he stopped drinking without help but failed to testify that he obtained a new prescription for Xanax at that time. Regardless of whether or not these two observations by the ALJ were a proper basis to evaluate Stogner's credibility, the reasons set forth above constitute substantial evidence to support the ALJ's conclusion.

Further, the ALJ utilized the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) when she considered Stogner's daily activities, the location of his pain, factors (such as sitting) which aggravate his symptoms, his medications, and other treatment he has received for his back and shoulder problems. Substantial evidence supported the credibility determination and no error is shown.

### Issue Three: whether the ALJ's Step 5 determination is unsupported by substantial evidence

Stogner argues that the ALJ's Step 5 determination that he is capable of performing past work as a bar manager is not supported by substantial evidence because the ALJ failed to consider all of his impairments (alcohol abuse) in formulating the hypothetical to the VE. The Commissioner responds that this is a Step 4 determination and vocational expert testimony is not required at this step. Further, the Commissioner asserts that Stogner's claim of error involves a function outside the scope of the VE's role at the hearing.

As stated above, the ALJ properly utilized § 404.1535. After finding Stogner disabled (considering his alcohol abuse) the ALJ considered what, if any, mental or physical limitations would be remaining if Stogner discontinued his alcohol abuse, and found that those they were not disabling, determining that he would have only mild limitations in the activities of daily living, social functioning, and concentration if the substance abuse ceased. Again, it would defeat the purpose of the regulations to require the ALJ to look again and consider alcohol related limitations to evaluate whether or not Stogner was disabled at the second stage of the process. No error is shown.

WHEREFORE, PREMISED CONSIDERD, it is ORDERED that Stogner's action against the Commissioner of Social Security Administration is DISMISSED WITH PREJUDICE.

**SIGNED this the 8th day of March, 2018.**

_____
KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE

16